**MOLINS PLC, Plaintiff–Appellant,**

v.

**Donald J. QUIGG, Assistant Secretary of Commerce, Defendant–Appellee.**

No. 87–1310.

United States Court of Appeals,
Federal Circuit.

Jan. 22, 1988.

James F. McKeown, Antonelli, Terry &
Wands, Washington, D.C., argued for
plaintiff-appellant. With him on the brief
were Donald R. Antonelli, Washington,
D.C., and Alan E. Schiavelli, Woodbridge,
Va.

Fred E. McKelvey, Deputy Sol., Office of
the Solicitor, Arlington, Va., argued for
defendant-appellee. With him on the brief
were Joseph F. Nakamura, Sol., and Lee E.
Barrett, Associate Sol., Washington, D.C.

Before BISSELL, Circuit Judge,
BALDWIN, Senior Circuit Judge, and
ARCHER, Circuit Judge.

BISSELL, Circuit Judge.

Molins PLC (Molins), a corporation orga-
nized under the laws of Great Britain, ap-
peals the judgment of the district court,
*Molins PLC v. Quigg*, 4 USPQ2d 1646
(D.D.C.1987) [Available on WESTLAW,
1987 WL 10138], dismissing as moot Mo-
lins' petition for a writ of mandamus to
compel the Commissioner of Patents and
Trademarks (the Commissioner) to revoke
the policy of the United States Patent and
Trademark Office (PTO) of making rejec-
tions of claims final on the first office
action and to enter Molins' proposed
amendment to its second continuation pat-
ent application. We affirm.

## BACKGROUND

In the examination of a patent applica-
tion before the PTO, the second official
action on the merits normally constitutes
final rejection. 3 *Patent Practice* 11–63 (I.
Kayton ed. 1985). However, the PTO has a
First Action Final Rejection (FAFR) policy
permitting a final rejection in specified situ-
ations:

> The claims of a new application may be
> finally rejected in the first Office action
> in those situations where (1) the new
> application is a continuing application of,
> or a substitute for, an earlier application,
> and (2) all claims of the new application
> (a) are drawn to the same invention
> claimed in the earlier application, and (b)
> would have been properly finally rejected
> on the grounds or art of record in the
> next Office action if they had been en-
> tered in the earlier application.

*Manual Of Patent Examining Procedure*
(MPEP) § 706.07(b) (5th ed., rev. Oct.
1987).

Molins, as assignee, filed a second contin-
uation patent application, Serial No. 648,-
262, along with a preliminary amendment.
All claims were finally rejected by the PTO
in a first office action under the FAFR
policy. Molins unsuccessfully petitioned
the Commissioner to remove this final re-
jection contending that the FAFR policy
was improper. It argued that a patent
application must receive a second examina-
tion before final rejection under the provi-
sions of 35 U.S.C. § 132 (1982): "Whenev-
er, on examination, any claim for a patent
is rejected [and] the applicant persists in
his claim for a patent, with or without
amendment, the application shall be reex-
amined [by the PTO]." After the Commis-
sioner's denial of the petition, Molins un-
successfully attempted to file an amend-
ment on July 1, 1985, proposing further
changes to the claims. It then simulta-
neously pursued two courses of action.
First, Molins appealed to the Board of Pat-
ent Appeals and Interferences (Board) the
merits of the PTO's final rejection of this
second continuation patent application.
Second, Molins filed in the district court a
petition requesting two writs of manda-

mus: the first to compel the Commissioner to rescind the FAFR policy and the second to compel the Commissioner to enter the proposed July 1, 1985 amendment.

On motion of the PTO, the district court stayed its proceeding pending a decision by the Board. The Board's decision affirmed-in-part and reversed-in-part the examiner's final rejection, entered a new ground of rejection and stated that Molins could elect to continue prosecution by way of an amendment pursuant to 37 C.F.R. § 1.196(b). On Molins' submission to the PTO and the subsequent entry of its amendment, the Commissioner moved in district court to dismiss the petition as rendered moot. The motion was granted. *Molins,* 4 USPQ2d at 1650.

## JURISDICTION

We have subject matter over this appeal as we did in *Dubost v. United States Patent and Trademark Office,* 777 F.2d 1561, 1564–65, 227 USPQ 977, 978–79 (Fed.Cir. 1985).

## CHOICE OF LAW

▉ In resolving choice of law questions we must consider "the general policy of minimizing confusion and conflicts in the federal judicial system." *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1574, 223 USPQ 465, 471 (Fed.Cir.1984). Consistent with that policy, we apply the law of that circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law. *See Panduit,* 744 F.2d at 1574–75, 223 USPQ at 471; *Atari, Inc. v. JS & A Group, Inc.,* 747 F.2d 1422 at 1439–40, 223 USPQ 1074, at 1087. Because the dispositive issue in this case focuses on justiciability in the district court and, in particular, the ripeness doctrine, which does not pertain to patent law issues and has no effect on this court's jurisdiction, we will apply the law of the D.C. Circuit. *Cf. Woodard v. Sage Products, Inc.,* 818 F.2d 841, 844, 2 USPQ2d

1649, 1651 (Fed.Cir.1987) ("deference is inappropriate on issues of our own appellate jurisdiction").

## JUSTICIABILITY

Molins concedes that its request for entry of the amendment was mooted when the PTO entered the amendment. Nevertheless, it argues that its request for the second writ of mandamus—its facial challenge to the FAFR policy—is still justiciable. We disagree, concluding that absent a particularized request, the validity of MPEP § 706.07(b) in view of 35 U.S.C. § 132 is not ripe for judicial review.[*]

The Supreme Court extensively examined the issue of ripeness and set forth the standard for judicial review in three companion cases: *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Assoc. v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Gardner v. Toilet Goods Assoc.,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). "In determining whether a challenge to an administrative [action] is ripe for review a twofold inquiry must be made: first to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief to the parties is denied at that stage." *Toilet Goods,* 387 U.S. at 162, 87 S.Ct. at 1523; *accord Abbott,* 387 U.S. at 148–49, 87 S.Ct. at 1515. The D.C. Circuit has stated that this twofold inquiry "in essence requires the court to balance its interest in deciding the issue in a more concrete setting against the hardship to the parties caused by delaying review. Thus, if the hardship [to the parties] is slight, 'only a minimum showing of countervailing judicial or administrative interest is needed ... to tip the balance against judicial review.'" *Webb v. Department of Health and Human Serv.,* 696 F.2d 101, 106 (D.C.Cir.1982) (footnotes omitted) (quoting *Diamond Shamrock Corp. v. Costle,* 580 F.2d 670, 674 (D.C.Cir.

---

[*] Because we resolve this action on the threshold issue of ripeness, we need not, and do not, reach the issue of whether the facial challenge to the FAFR policy was moot, as so held by the district court. *Molins,* 4 USPQ2d at 1650. Further, ripeness at the time this action was filed is not at issue and not here decided.

1978)); *accord Continental Airlines, Inc. v. Civil Aeronautics Bd.*, 522 F.2d 107, 124–25 (D.C.Cir.1974) (rehearing en banc).

■ In resolving the fitness prong of the ripeness issue, we must determine if the challenged action raises purely legal questions. If so, it is presumptively fit for judicial review, unless the courts or agency would benefit from postponement of review until the agency's policy has crystallized or the question arises in a more concrete setting. *See Better Gov't Assoc. v. Department of State*, 780 F.2d 86, 92 (D.C. Cir.1986); *Eagle–Picher Indus. v. United States Envtl. Protection Agency*, 759 F.2d 905, 915 (D.C.Cir.1985); *accord Toilet Goods*, 387 U.S. at 162–64, 87 S.Ct. at 1523–24.

The Commissioner states that the FAFR practice has been in existence for over sixty years since the decision in *Ex parte Ball*, 1924 Dec. Comm'r Pat. 123 (1923). Although Molins challenges this assertion, neither party disputes that the practice has existed for an extended period of time. Accordingly, we agree that the PTO's FAFR policy is in final form and will assume for the purposes of this opinion that Molins' facial challenge to this policy presents purely legal questions. Thus, the issue is presumptively fit for judicial review.

■ Hence, assuming, *arguendo*, that Molins' challenge crosses this threshold, the question becomes whether we, the district court, or the PTO would benefit from postponing review of the FAFR policy until such time as it is presented in the context of a specific application. We conclude that an appraisal of this policy would benefit from review in a more concrete setting because it is inappropriate to review such a longstanding agency practice, absent a specific application of that practice, the first time it has been challenged. *Cf. Horner v. Andrzjewski*, 811 F.2d 571, 574 (Fed. Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 257, 98 L.Ed.2d 215 (1987) (long-standing interpretation of a statute by an agency charged with its administration must be upheld if reasonable) (citing *Young v. Community Nutrition Inst.*, 476 U.S. 974,

979–82, 106 S.Ct. 2360, 2364–65, 90 L.Ed.2d 959 (1986)). Clearly, the MPEP has no binding effect on this court but its provisions represent the PTO's interpretation of the statutes and regulations, *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1439, 221 USPQ 97, 107 (Fed.Cir. 1984), and an agency's interpretation of statutes and regulations deserves some deference. *See American Lamb Co. v. United States*, 785 F.2d 994, 1001 (Fed.Cir. 1986) (citing *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450–51, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978)). Thus the presumption in favor of review at the present time is overcome and review of this issue should be delayed "unless the interest in postponing judicial review is outweighed by the resultant hardship to [Molins]." *Webb*, 696 F.2d at 107. "In order to outweigh any institutional interests in the deferral of review, [Molins] must demonstrate 'hardship,' *i.e.*, that 'the impact of the administrator's action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs.'" *Better Government*, 780 F.2d 86, 92 (citing *Toilet Goods*, 387 U.S. 158, 164, 87 S.Ct. 1520, 1524).

■ Molins contends that because it frequently files patent applications in this country, the FAFR policy has a continuing impact on the manner in which it conducts its affairs. We do not agree. With regard to hardship, the D.C. Circuit in *Webb* reviewed a factual scenario similar to that of the present action. *Webb* involved a medical doctor seeking (1) disclosure under the Freedom of Information Act (FOIA) of data contained in a New Drug Application filed with the Food and Drug Administration (FDA) and (2) invalidation of an FDA regulation that allegedly violated the FOIA. *Id.* at 104. The doctor argued that, although the requested information was subsequently released, his facial challenge to the regulation was still justiciable. *Id.* at 106. Holding that the challenge was not fit for judicial review absent a particularized request, the court considered the resultant hardship. "The only hardship Webb will endure as a result of delaying

consideration of this issue is the burden of having to file another suit. This is hardly the type of hardship which warrants immediate consideration of an issue presented in abstract form." *Id.* at 107 (footnote omitted). Molins' action likewise fails because it suffers from the same deficiencies—it is *not fit for judicial review* and the only hardship to Molins is the burden of having to file another petition. Molins has not demonstrated that the FAFR policy has an immediate impact on it in conducting its day-to-day affairs.

This case is distinguishable from *Better Government*, 780 F.2d 86, upon which Molins relies. *Better Government* involved attempts to obtain information under the FOIA with accompanying requests to waive the search and copying fees. *Id.* at 88. The waivers were initially refused under Department of Justice (DOJ) guidelines and only granted after the requestor had filed suit challenging those guidelines. *Id.* The court held that the challenges to the specific fee waivers were moot, but that the facial challenge to the guidelines *was fit* for judicial review, and the resulting hardship caused by the continued use of the DOJ guidelines would have a direct and immediate impact on the requestor's primary conduct. *Id.* at 90–93. The court held that "access to information through FOIA was vital to [the requestor's] organizational mission." *Id.* at 93. Conversely, we have held that Molins' action *is not presently fit* for judicial review and Molins has failed to demonstrate that delay of review will have a direct and immediate impact upon its primary conduct.

## CONCLUSION

Although the countervailing judicial or administrative interests in deciding this issue in a more concrete setting are not significant, in the absence of a particularized request, those interests are sufficient when balanced against the hardship to Molins. A case or controversy may be constitutionally ripe for review but that does not automatically invoke review. Prudential considerations must also be satisfied. 13A C. Wright, A. Miller & E. Cooper *Federal Practice and Procedure* § 3532.1 at 118 (2d ed. 1984). Here they are not. Thus, review must await a more concrete setting. If, in the future, Molins has a continuation application which has been subjected to a FAFR office action and this final rejection has been affirmed by the PTO Board, the issue of the legality of the FAFR policy in view of 35 U.S.C. § 132 will then be ripe for review.

AFFIRMED.