**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Plaintiff–Appellant,**

v.

**INTEGRATED NETWORK CORPORATION, Robert R. Hackett, Gregory S. Kenepp, Michael M. Luniewicz and Martin L. Swim, Defendants–Appellees.**

No. 91–1436.

United States Court of Appeals, Federal Circuit.

Aug. 20, 1992.

Martin S. Landis, Basking Ridge, N.J., argued for plaintiff-appellant. With him on the brief was Joseph L. Lazaroff. Also on the brief were Raymond R. and Ann W. Trombadore, A Professional Corp., Somerville, N.J., of counsel.

Robert D. Fier, Kenyon & Kenyon, New York City, argued for defendants-appellees. With him on the brief was Francis T. Carr.

Before NIES, Chief Judge, MAYER and CLEVENGER, Circuit Judges.

MAYER, Circuit Judge.

American Telephone and Telegraph Company appeals from orders of the United States District Court for the District of New Jersey denying its motion to remand the case to state court because the complaint presents a substantial question of patent law sufficient to confer federal jurisdiction under 28 U.S.C. § 1338 (1988). *American Tel. & Tel. Co. v. Integrated Network Corp.*, No. 91-701 (June 27, 1991; May 6, 1991). We reverse.

## Background

American Telephone and Telegraph Company (AT & T) sued Integrated Network Corporation (INC) and four INC employees, Robert R. Hackett, Gregory S. Kenepp, Michael M. Luniewicz, and Martin L. Swim, all former employees of Bell Telephone Laboratories (Bell Labs), a wholly owned subsidiary merged into AT & T, in the Superior Court of Somerset County, New Jersey, to obtain title to United States Patent 4,849,972 ('972 patent). In its complaint, AT & T alleged that the four former AT & T employees who invented a digital data communications terminal and modules system * and then assigned the '972 patent covering it to INC actually conceived the invention while they were employees of AT & T. Specifically, AT & T alleges that the "invention" was disclosed in a proprietary Bell Labs memorandum prepared by Luniewicz on June 11, 1985. The complaint has four counts: (1) breach of contract; (2) breach of fiduciary duty; (3) misuse and misappropriation of proprietary information; and (4) inducing breach of contract and misuse and misappropriation of proprietary information.

While at AT & T, the four inventors executed the following document:

### AGREEMENT FOR ASSIGNMENT OF INVENTIONS

IN CONSIDERATION of my employment by Bell Telephone Laboratories, In-

---

* The complaint describes the invention as relating to a system for coupling time multiplexed communications lines. These communications lines carry a digital signal to a plurality of secondary lines, through conditioning circuits known as "channel units." The patent itself claims a controller (to insert digital data into the digital signal) and channel units (to utilize the inserted data to set the operating parameters of the channel units). This is sufficient for purposes of this case.

corporated, during such time as may be mutually agreeable to that Corporation and myself, I hereby assign and agree to assign to said Corporation, its successors and assigns, all my rights to *inventions* which, during the period of my employment by said Corporation or by its successors in business, I have made or *conceived* or may hereafter make or conceive, either solely or jointly with others, in the course of such employment or with the use of said Corporation's time, material or facilities, or relating to any subject matter with which said Corporation is or may be concerned; and I further agree, without charge to said Corporation, but at its expense, to execute, acknowledge and deliver all such further papers, including applications for patents, as may be necessary to obtain patents for said inventions in any and all countries and to vest title thereto in said Bell Telephone Laboratories, Incorporated, its successors or assigns. [Emphasis added.]

The four men left AT & T at various times beginning in June 1985, with Kenepp being the last to leave in February 1986. They all accepted employment at INC and were joined as a team. The application for the '972 patent was filed in July 1987, named the four employees as inventors, and disclosed that the application was assigned to INC.

INC removed this case to the United States District Court for the District of New Jersey. AT & T then moved in the district court to remand the case to the state court, arguing that because AT & T's claims are state contract and tort claims, they do not arise under the patent laws of the United States, and there is no federal jurisdiction. In denying the motion, the district court held that to recover, AT & T would necessarily have to prove when the invention was conceived, that is, either while the inventors were employees of AT & T or of INC. This, it said, is a substantial question of federal patent law necessary to the decision; therefore, under *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811, 7 USPQ2d 1109 (1988), federal jurisdiction is proper.

In response to AT & T's motion for reconsideration, the court reaffirmed its original order. First, in answer to AT & T's assertion that it misapplied *Christianson,* the court stated that the fact that not all of AT & T's counts relied on patent law did not destroy federal jurisdiction; as long as one of its counts so relied, such jurisdiction was proper. The court explained that a contrary holding would permit plaintiffs to escape federal jurisdiction by merely adding a non-patent count. Second, in response to AT & T's argument that the word "conceived," as used in the agreement between the inventors and AT & T, must be given a broad, non-patent meaning, the court held that absent evidence of a contrary intent, it must give the word its technical meaning. Third, against the position of AT & T, the court held that the question of when the invention claimed in the '972 patent was conceived is a substantial question of federal patent law. The court certified both orders for interlocutory appeal to this court pursuant to 28 U.S.C. § 1292(b) (1988), and we granted AT & T's petition for permission to appeal.

### *Discussion*

According to 28 U.S.C. § 1338(a), "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." In *Christianson,* the Supreme Court adverted to its mode of analysis for federal question jurisdiction under 28 U.S.C. § 1331 (1988) in defining jurisdiction under section 1338:

Linguistic consistency, to which we have historically adhered, demands that § 1338(a) jurisdiction likewise extend only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent

law, in that patent law is a necessary element of one of the well-pleaded claims.

486 U.S. at 808, 108 S.Ct. at 2174, 7 USPQ2d at 1113. Most relevant to this case, the Court continued, "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Id.* at 810, 108 S.Ct. at 2174, 7 USPQ2d at 1114. We acknowledge that *Christianson* undertook its inquiry in deciding where appellate jurisdiction lay as between the Federal Circuit and the regional circuits, but appellate jurisdiction is derivative of the district courts' statutory jurisdiction so the same analysis attends the determination of whether a case should have been filed in federal or state court. *See MCV, Inc. v. King–Seeley Thermos Co.,* 870 F.2d 1568, 1570, 10 USPQ2d 1287, 1289 (Fed.Cir.1989); *Speedco, Inc. v. Estes,* 853 F.2d 909, 911, 7 USPQ2d 1637, 1639 (Fed.Cir.1988).

There is no suggestion that the patent law creates AT & T's cause of action. We will assume for purposes of this case that the construction of a term in a contract could sustain jurisdiction under section 1338(a). But we do not find the proposition intuitively obvious, and there are no reported cases that so hold. Regardless, we do not believe AT & T's right to relief "necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson,* 486 U.S. at 809, 108 S.Ct. at 2174, 7 USPQ2d at 1113. All four counts of the complaint focus on the same allegation: the breach of the agreement between AT & T and the employees. AT & T alleges breach of contract and breach of fiduciary duty by the employees' failure to assign the patent to it, and misuse and misappropriation of proprietary information by the disclosure to INC and eventual publication of the information contained in the patent. The last count simply accuses the officers of INC of inducing the above conduct. These are traditional contract and tort claims. The complaint also demands relief available under the general law: title to the

patent and all documents related to the information wrongfully used by the employees.

The only possible patent issue is the purport of the language of the contract, "inventions ... conceived." We disagree with the district court that conception of inventions, as used in the employment agreement, is solely a technical question of patent law. The former employees pledged to assign AT & T all rights to such inventions, but the contract sheds no further light on the meaning of inventions. Notwithstanding, there is no reason to assume it meant to cover only those which are patentable. It could include unpatentable inventions and inventions held as trade secrets as well. Likewise, when an invention was conceived may be more a question of common sense than of patent law. For example, if what the employees "conceived" at AT & T had not been patentable, or no patent had been sought, but it nevertheless was treated as a trade secret, their conduct still could have been in breach of the contract. In other words, the contract may have used conception in its generic, broadest sense. We will not assume a bob-tailed meaning that could lead to derogation of the primary right of the state courts to decide what state law has to say about this contract.

Under *Christianson,* every theory of a claim as pled must depend on patent law if there is to be federal jurisdiction. Because "inventions ... conceived" has both patent and general law meanings, AT & T may rely on one theory with patent connotations, and on another theory involving no patent question. Therefore, any patent issue is not necessary to AT & T's claim, and is therefore not a substantial question of patent law; it is ancillary and cannot of itself sustain jurisdiction.

This result is not remarkable. In *Beghin–Say, International, Inc. v. Ole-Bendt Rasmussen,* 733 F.2d 1568, 221 USPQ 1121 (Fed.Cir.1984), federal jurisdiction was denied when the plaintiffs sued for a declaration of the validity of two patent assignments because the claim sounded purely in contract. When a party

appealed from a district court's confirmation of an arbitration award in *Ballard Medical Products v. Wright,* 823 F.2d 527, 531, 3 USPQ2d 1337, 1339 (Fed.Cir.1987), we said, "That patent validity or infringement issues may have been injected during the course of an arbitration proceeding in a contract suit forms no basis for asserting that the district court's jurisdiction was based on § 1338 and hence forms no basis for asserting jurisdiction in this court." *See Consolidated World Housewares, Inc. v. Finkle,* 831 F.2d 261, 265, 4 USPQ2d 1565, 1568 (Fed.Cir.1987) ("as this court has repeatedly said, the mere presence of a patent issue cannot of itself create a cause of action arising under the patent laws.... That a contract action may involve a determination of the true inventor does not convert that action into one 'arising under' the patent laws.")

*Speedco,* decided just after *Christianson* was announced, affirmed the dismissal of a declaratory judgment action seeking an "evaluation" of the validity and enforceability of a patent and a reformation of an assignment agreement. *Speedco* looked to the complaint that the declaratory defendant might have filed and saw that it would have been a contract action for enforcement of the agreement and payment on the note; hence, no jurisdiction. To Speedco's depiction of the " 'unappealing prospect' of having its patent rights determined in the state courts of Kentucky," the court responded that "the statutory limitations on the jurisdiction of this court and the federal district courts, in conjunction with the well-pleaded complaint rule, can and do result in state courts resolving patent issues." 853 F.2d at 913, 7 USPQ2d at 1641. The court further sought to calm Speedco's fears by observing that

> state courts confronted with federal law issues usually turn to the law of the appropriate federal court to aid in the resolution of those federal issues.... As Congress created this court in order to bring uniformity to the national law of patents, presumably the state courts confronted with issues of federal law which relate to patents will therefore also look

to the decisions of this circuit for guidance.

*Id.* at 914, 7 USPQ2d at 1641. This is precisely our circumstance—the New Jersey court is free to look for guidance to the law on the conception of inventions as we may have explained it, but in light of the different facets of the word conceive, indeed of inventions, this may well not be determinative of the outcome of this case. *See, e.g., Ingersoll–Rand Co. v. Ciavatta,* 110 N.J. 609, 542 A.2d 879, 8 USPQ2d 1537 (1988). Because a court will look to federal law, however, does not confer federal jurisdiction.

*MCV,* 870 F.2d at 1570, 10 USPQ2d at 1289, concluded under *Christianson* that federal jurisdiction was proper, but the case was both founded on 35 U.S.C. § 256 (1988), which "explicitly authorizes [federal] judicial resolution of co-inventorship contests over issued patents," and involved a substantial question of patent law amenable to no non-patent construction. Likewise, jurisdiction was proper in *Kunkel v. Topmaster International, Inc.,* 906 F.2d 693, 695, 15 USPQ2d 1367, 1368 (Fed.Cir. 1990), where we applied the prescription of the pre-*Christianson Air Products & Chemicals v. Reichhold Chemicals,* 755 F.2d 1559, 1562, 225 USPQ 121, 123 (Fed. Cir.1985), that "[a] court reviewing the complaint must give special attention to the relief sought by the plaintiff in determining whether it contains a cause of action arising under the patent laws or only a cause of action based on a licensing agreement." The *Kunkel* plaintiffs alleged ownership of a patent and infringement, and requested treble damages and an injunction, but they did not seek a remedy for breach of contract, the opposite of our case.

### Conclusion

Accordingly, the orders of the United States District Court for the District of New Jersey are reversed, and the case is remanded with directions that it be transferred to state court.

### COSTS

Integrated Network Corporation, Robert R. Hackett, Gregory S. Kenepp, Michael M.

Luniewicz, and Martin L. Swim shall bear the costs of this appeal.

REVERSED AND REMANDED.