LEATHERMAN TOOL GROUP
INCORPORATED, Plaintiff–
Appellee,

v.

COOPER INDUSTRIES, INC.,
Defendant–Appellant.

No. 97–1187.

United States Court of Appeals,
Federal Circuit.

Nov. 19, 1997.

Bruce W. DeKock, Chernoff, Vilhauer, McClung & Stenzel, LLP, Portland, OR, argued, for plaintiff-appellee. With him on the brief were J. Peter Staples and Julianne Ross Davis.

John D. Vandenberg, Klarquist Sparkman Campbell Leigh & Whinston, LLP, Portland, OR, argued, for defendant-appellant. With him on the brief were David J. Earp, and Garth A. Winn.

Before RICH, RADER, and BRYSON, Circuit Judges.

RICH, Circuit Judge.

Cooper Industries, Inc. (Cooper) appeals from the grant of a preliminary injunction by the United States District Court for the District of Oregon, enjoining Cooper from offering to sell or selling its Crescent Brand ToolZall (ToolZall) product within the United States. The district court determined that Leatherman Tool Group Inc. (Leatherman) was likely to succeed on the merits on a trade dress infringement claim based on its Leatherman Pocket Survival Tool (Pocket Tool). *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 44 USPQ2d 1275 (D.Or. 1996). We do not reach the merits of this appeal because we have no subject matter jurisdiction over it. Therefore, we transfer the case pursuant to 28 U.S.C. § 1631 (1994) to the Ninth Circuit Court of Appeals for adjudication of the appeal on its merits.

## BACKGROUND

Leatherman sued Cooper for trade dress infringement, unfair competition, and false advertising under the Lanham Act, as well as common law unfair competition, based on Cooper's manufacture and sale of its ToolZall that Leatherman asserted was substantially similar to its Pocket Tool. Cooper offered as an affirmative defense and as its first coun-

terclaim that Leatherman's Pocket Tool was dedicated to the public domain during prosecution of a utility patent application, in which, Cooper asserts, Leatherman unsuccessfully attempted to claim essentially its Pocket Tool design.[1] Considering Leatherman's complaint and Cooper's answer and counterclaims, the only basis asserted for our subject matter jurisdiction to entertain this appeal is in Cooper's affirmative defenses and declaratory judgment counterclaim involving its public domain defense. Cooper's public domain defense involves Leatherman's failed attempt to claim the design of its Pocket Tool in a patent, which, Cooper asserts, placed the Pocket Tool design in the public domain making it possible for any competitor, including Cooper, to copy the Pocket Tool Design without incurring liability.[2]

In addressing Leatherman's motion to dismiss Cooper's first counterclaim, the district court found that "[s]ince [Cooper] has stated a claim and may be able to establish that the design is now simply part of the public domain (like a hammer design) and thus, unprotectable [Leatherman's] motion to dismiss (# 55) is DENIED." *Leatherman*, 44 USPQ2d at 1280–81. The district court held an evidentiary hearing on Leatherman's motion for a preliminary injunction against Cooper's offers to sell or sales of its ToolZall. The district court found Leatherman was likely to succeed on its trade dress infringement claim because Leatherman had demonstrated likelihood of success in proving its

1. Cooper also asserts on appeal that the Pocket Tool design's inherent functionality precludes trade dress protection under the Lanham Act.

2. Cooper's asserted public domain affirmative defenses are as follows:
   33. Leatherman is estopped from asserting trade dress claims in the various Leatherman multifunction tool[s] by reason of Leatherman's failed attempt to secure federal patent protection for the tool.
   34. Leatherman's state trade dress claims are preempted by the federal law.
   35. Leatherman's federal trade dress claims are barred by reason of Leatherman's failed attempt to secure federal patent protection for the various Leatherman tools.
   36. Cooper is entitled to make, use and sell the Crescent® ToolZall ™ tool under the federal patent laws.

Pocket Tool design was de jure nonfunctional; in proving secondary meaning of its Pocket Tool design; and in proving that consumers are likely to be confused. *Id.* at 1278–80. The district court presumed irreparable harm and granted Leatherman's motion for a preliminary injunction against Cooper's sale of, or offers to sell, its ToolZall product.

Subsequent to Cooper's appeal, the district court ruled on a motion by Leatherman for partial summary judgment that included Cooper's public domain counterclaim. The district court found that:

> Although the three patent applications submitted as exhibits with these motions disclose many of the features of the LPST and provide diagrams of the overall appearance of the LPST, I do not find that the overall product configuration of the LPST (including its size, shape, color and overall appearance) is disclosed as a significant, necessary aspect of the invention.
>
> Given the legal nature of this defense, I find no genuine issues of material fact to preclude summary judgment. I hold that the public domain defense is unavailable as a matter of law either because [Leatherman] seeks only to protect allegedly nonfunctional aspects of its trade dress, or because the claimed trade dress does not constitute a significant, material aspect of . . . the patent applications.

*Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, CV No. 96–1346–MA, slip op. at 6 (D. Or. June 26, 1997).

37. Leatherman dedicated the configuration and design of the various Leatherman multifunction tools to the public by disclosing, but not claiming, the configuration and design in an issued United States patent.
38. The configuration and design of the various Leatherman tools is in the public domain. Cooper's declaratory judgment counterclaim is as follows:
1. This Counterclaim seeks a declaratory judgment that Leatherman is precluded under the federal patent laws of the United States, 35 U.S.C., from preventing, or attempting to prevent, Cooper from making, using, offering to sell, selling or exporting the Crescent® ToolZall ™ tool. This Court has subject matter jurisdiction over this counterclaim under 28 U.S.C. §§ 1338, 2201, and 2202.

Cooper appeals from the district court's grant of the preliminary injunction. Cooper asserts that we have subject matter jurisdiction over this appeal under 28 U.S.C. §§ 1292(c)(1) (1994) based on its self-styled patent law, public domain counterclaim.

## DISCUSSION

■ Section 1292(c)(1) provides that we have exclusive jurisdiction "of an appeal from an interlocutory order or decree described in subsection (a) or (b) of [section 1292] in any case over which the court would have jurisdiction of an appeal under section 1295 of [Title 28]...." The parties do not dispute that the district court's decision to enter a preliminary injunction is an interlocutory order described in § 1292(a). Therefore, our analysis will focus on whether we have subject matter jurisdiction of the appeal under § 1295(a)(1).

To establish subject matter jurisdiction in this court under § 1295(a)(1) for a case involving Title 35 of the United States Code, the Supreme Court has stated that

As relevant here, 28 U.S.C. § 1295(a)(1) grants the Court of Appeals for the Federal Circuit exclusive jurisdiction over "an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on 28 U.S.C. section 1338...." Section 1338(a), in turn, provides in relevant part that "the district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents...." Thus, the jurisdictional issue before us turns on whether this is a case "arising under" a federal patent statute, for if it is then the jurisdiction of the District Court was based at least "in part" on § 1338.

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 807, 108 S.Ct. 2166, 2173, 100 L.Ed.2d 811, 7 USPQ2d 1109, 1112–13 (1988) (citation omitted). In interpreting these jurisdictional statutory provisions, the Supreme Court stated:

Linguistic consistency, to which we have historically adhered, demands that § 1338(a) jurisdiction likewise extend only to those cases in which a well-pleaded com-

plaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.

*Id.* at 808–09, 108 S.Ct. at 2174, 100 L.Ed.2d 811, 7 USPQ2d at 1113 (citations omitted). Therefore, "a case raising a federal patent-law defense does not, for that reason alone, 'arise under' patent law, 'even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.'" *Id.* at 809, 108 S.Ct. at 2174, 100 L.Ed.2d 811, 7 USPQ2d at 1113 (citation omitted).

No question exists that the complaint raises no cause of action under the federal patent laws. The only issue is whether Cooper's asserted public domain affirmative defenses and counterclaims establish subject matter jurisdiction.

Cooper asserts that the Constitution and the federal patent laws grant an affirmative right to the public to copy freely unpatented useful inventions and useful features that are disclosed, but not claimed, in a patent. Cooper asserts that a Leatherman 1978 utility patent application, serial no. 924,180, that resulted in issued U.S. Patent No. 4,238,862, originally had a claim to most of the design elements of Leatherman's Pocket Tool on which Leatherman's trade dress infringement claim is based. Cooper asserts that the claim to the tool design was rejected as obvious from the prior art, and that Leatherman's prosecuting attorney canceled the claim. Therefore, Cooper concludes, by disclosing most of its current tool design in an issued patent and unsuccessfully claiming it as a patented invention, Leatherman placed its design in the public domain, giving Cooper the affirmative right to copy the tool design under federal law.

Leatherman asserts that we do not have subject matter jurisdiction over this appeal based on any affirmative defenses or counterclaims raised by Cooper. Leatherman argues that under the well-pleaded complaint rule of *Christianson,* defenses, such as Coo-

per's public domain defense, that are raised in response to a complaint do not give rise to jurisdiction. Leatherman also argues that Cooper's incorporation of its same public domain defense in a counterclaim seeking a declaratory judgment does not imbue this court with subject matter jurisdiction. Leatherman argues that in *Speedco v. Estes,* 853 F.2d 909, 7 USPQ2d 1637 (Fed.Cir.1988), we followed the Supreme Court's decision in *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), where plaintiff sought a declaratory judgment, as Cooper is doing in its public domain counterclaim, by applying the well-pleaded complaint rule, not to the declaratory judgment complaint, but to the action that the declaratory defendant would have brought. In this case, Leatherman argues, Cooper could have reasonably apprehended only that Leatherman would bring a trade dress infringement or false advertising claim. Leatherman asserts its complaint does not address any patent infringement by Cooper, and does not rely on any patent for its relief. Therefore, under *Speedco* and *Christianson,* Cooper's counterclaim does not "arise under" the patent laws in accordance with 28 U.S.C. § 1338(a) and the Federal Circuit does not have jurisdiction under 28 U.S.C. § 1295(a)(1). We agree with Leatherman that we have no subject matter jurisdiction over this case.

Cooper asserts its affirmative right to file a declaratory judgment counterclaim based on a federal right to copy what is in the public domain on a statement made by the Supreme Court in a preemption case, *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118, 9 USPQ2d 1847 (1989), in reaction to our statement in *Interpart Corp. v. Italia,* 777 F.2d 678, 685, 228 USPQ 124, 129 (Fed.Cir.1985), that patent laws do not say anything about the right to copy, but only the right to exclude. The Supreme Court responded to our statement in *Interpart* in the following manner:

> Finally, we are somewhat troubled by the *Interpart* court's reference to the *Mine Safety [Appliances Co. v. Electronic Storage Battery Co.,* 56 C.C.P.A. 863, 405 F.2d 901 (1969)] case for the proposition that the patent laws say "nothing about the right to copy or the right to use." As noted above, the federal standards for patentability, at a minimum, express the congressional determination that patent-like protection is unwarranted as to certain classes of intellectual property. The States are simply not free in this regard to offer equivalent protections to ideas which Congress has determined should belong to all. For almost 100 years it has been well established that in the case of an expired patent, the federal patent laws *do* create a federal right to "copy and to use." *Sears* and *Compco* extended that rule to potentially patentable ideas which are fully exposed to the public. The *Interpart* court's assertion to the contrary is puzzling and flies in the face of the same court's decisions applying the teaching of *Sears* and *Compco* in other contexts. *See Power Controls Corp. v. Hybrinetics, Inc.,* 806 F.2d 234, 240 (C.A.Fed.1986) ("It is well established that an action for unfair competition cannot be based upon a functional design."); *Gemveto Jewelry Co. v. Jeff Cooper Inc.,* 800 F.2d 256, 259 (C.A.Fed. 1986) (vacating injunction against copying of jewelry designs issued under state law of unfair competition "in view of the *Sears* and *Compco* decisions which hold that copying of the article itself that is unprotected by the federal patent and copyright laws cannot be protected by state law.").

*Bonito Boats,* 489 U.S. at 164–65, 109 S.Ct. at 985, 103 L.Ed.2d 118, 9 USPQ2d at 1857.

From this passage, it is clear that the Supreme Court is not creating a federal right to bring a cause of action affirmatively against a competitor to ask for a declaration that under this federal right the declaratory judgment plaintiff has the "right to copy" a particular design in the public domain. The Supreme Court merely stated that while the patent laws provide the right to exclude others from making, using, or selling a claimed invention for a statutorily limited amount of time, if such rights could be but were not awarded under the patent laws, the states may not provide commensurate protection. Therefore, the patent laws do speak to the issue of the public's right to copy what is in

the public domain, but only in the context of unfettering such protection or lack thereof from state interference. The Supreme Court in *Bonito Boats,* however, did not create an affirmative right to file a cause of action against a competitor alleging that the federal patent laws create a "right to copy" what is in the public domain. That is a common law right.

In fact, the federal patent laws do not create any affirmative right to make, use, or sell anything. As the Supreme Court has stated, "[t]he franchise which the patent grants, consists altogether in the right to exclude every one from making, using, or vending the thing patented, without the permission of the patentee. This is all that he obtains by the patent." *Bloomer v. McQuewan,* 55 U.S. 539, 548, 14 How. 539, 14 L.Ed. 532 (1852). In expounding further on the right to exclude, the Supreme Court stated that when a purchaser of a patented article uses the article,

> [H]e exercises no rights created by the act of Congress, nor does he derive title to it by virtue of the franchise or exclusive privilege granted to the patentee. The inventor might lawfully sell it to him, whether he had a patent or not, if no other patentee stood in his way. And when the machine passes to the hands of the purchaser, it is no longer within the limits of the monopoly. It passes outside of it, and is no longer under the protection of the act of Congress.

*Id.* at 549 (citations omitted). Therefore, the Supreme Court made clear that the patent laws provide a limited right to exclude others from making, using, or selling a claimed invention for a limited period of time, but afford no affirmative right to make, use, and sell a patented invention. By the same token, the patent laws create no affirmative right supporting a cause of action against a competitor to assert a right to make or copy what is in the public domain and excluded from patent protection. The Supreme Court's decision in *Bonito Boats* did not change this result. Therefore, no basis under the federal patent laws exists to support Cooper's right to file a declaratory judgment counterclaim seeking a declaration that it has

a "right to copy" Leatherman's Pocket Tool design that Cooper asserts is in the public domain.

To argue that trade dress protection cannot be afforded to Leatherman because the design is in the public domain is merely a defense to Leatherman's claim for trade dress infringement. *Cf. Miller v. Bridgeport Brass Co.,* 104 U.S. 350, 351, 26 L.Ed. 783 (1881) ("But it must be remembered that the claim of a specific device or combination, and an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed."). As an affirmative defense raised in response to the trade dress infringement claim in Leatherman's complaint, which admittedly does not "arise under" the patent laws, this defense does not give rise to jurisdiction under *Christianson.* 486 U.S. at 808, 108 S.Ct. at 2173–74, 100 L.Ed.2d 811, 7 USPQ2d at 1113; *see also Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986) ("A defense that raises a federal question is inadequate to confer federal jurisdiction.").

## CONCLUSION

We hold that we have no subject matter jurisdiction over this appeal under 28 U.S.C. § 1292(c)(1). We transfer this appeal pursuant to 28 U.S.C. § 1631 to the United States Court of Appeals for the Ninth Circuit, the circuit court in which appeals from interlocutory orders from the United States District Court for the District of Oregon are heard.

*TRANSFERRED.*